**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BOBBY CRUZ, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 15-cv-3188 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Petitioner Bobby Cruz's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [1] and his motion for leave to amend his petition [18]. For the reasons set forth below, the Court denies Petitioner's 28 U.S.C. § 2255 motion [1] and his motion to amend [18]. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2), and directs the Clerk to enter judgment in favor of Respondent.

**I.    Background**

In 2011, Petitioner Bobby Cruz was indicted for multiple offenses against children. See *United States v. Cruz*, Case No. 11-CR-773, Dkt. 6 (N.D. Ill.). He was charged with four counts of production of child pornography in violation of 18 U.S.C. § 2251(a), involving at least three different victims (Counts 1–4). *Id.* at 1–4. He was charged with "cross[ing] a State line with intent to engage in a sexual act with another person who had not attained the age of 12 years" in violation of 18 U.S.C. § 2241(c), which also involved one of his child pornography production victims (Victim C) (Count 5). *Id.* at 5. In addition, he was charged with transportation of at least one hundred images of child pornography and a child pornography video in violation of 18 U.S.C. § 2252A(a)(1) (Counts 6–7), and possession of child pornography on a series of

computers, external hard drives, and thumb drives in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 8). *Id.* at 6–8. The indictment alleged that most of this charged conduct occurred in either Des Plaines or Morris, Illinois, while the Aggravated Sexual Abuse Count was alleged to have occurred "in the Northern District of Illinois, Eastern Division, and elsewhere." *Id.* at 5.

After Petitioner was charged in the Northern District of Illinois, separate charges were filed against him in the Central District of Illinois. See *United States v. Cruz*, Case No. 11-CR-773, Dkt. 28, ¶ 2(b) (N.D. Ill.) ("Plea Agreement"). Those charges were for two separate counts of production of child pornography, one of which again involved Victim C. *Id.* ¶¶ 6(b)–(c). On September 19, 2013, Petitioner requested to transfer jurisdiction over that case to the Northern District of Illinois pursuant to Federal Rule of Criminal Procedure 20. *United States v. Cruz*, Case No. 11-CR-773, Dkt. 26 (N.D. Ill.).

On September 30, 2013, Petitioner entered into a plea agreement in which he pled guilty to Count 5 of the indictment filed in the Northern District of Illinois (the "Aggravated Sexual Abuse Count") and the two child pornography production counts from the indictment filed in the Central District of Illinois. See Plea Agreement ¶ 5. Defendant agreed that he had "read the charges against him," "those charges ha[d] been fully explained to him by his attorney," and he "fully [understood] the nature and elements of the crimes with which he ha[d] been charged." *Id.* ¶¶ 3–4. He also provided a detailed factual basis supporting his plea to the Aggravated Sexual Abuse Count, admitting that these "facts establish his guilt beyond a reasonable doubt." *Id.* ¶ 6.

Specifically, Petitioner admitted that "on or about October 22, 2010, in the Northern District of Illinois, Eastern Division, and elsewhere, [Petitioner] crossed a State line with intent to engage in a sexual act" with Victim C. *Id.* ¶ 6(a). He acknowledged that he "traveled from Des Plaines, Illinois to St. Louis, Missouri, with Victim C and Victim C's family," and Petitioner

had molested and taken nude photographs of Victim C on several different occasions" prior to this trip. *Id.* Petitioner expressly admitted that "[a]t the time of the travel, [he] intended to engage in a sexual act with Victim C, who was 11 years old, once arriving in Missouri." *Id.* The plea then recounts how Petitioner abused Victim C in a hotel room after they arrived in Missouri.

In connection with Count 1 of the indictment from the Central District of Illinois, Petitioner admitted that he "created at least 167 photographs and 1 video of Victim C engaging in sexually explicit conduct" while Victim C was between 7 and 10 years old. *Id.* ¶ 6(b). Petitioner admitted that these photographs document his direct sexual abuse of Victim C. *Id.* The plea then provides additional graphic details about these photos and how Petitioner directed Victim C to expose himself so he could be photographed. *Id.* The agreement provides a similarly detailed factual basis for the second count from the Central District of Illinois indictment and other conduct that the parties agreed would be counted as relevant conduct for sentencing purposes. Of note, Petitioner "admit[ed] the following facts and that those facts constitute relevant conduct" related to his production of child pornography involving Victims D, E, F, G, and H, whose ages ranged from 2 to 11 years old. *Id.* ¶ 8.

By pleading guilty to the Aggravated Sexual Abuse Count, Petitioner faced a mandatory minimum sentence of 30 years and a maximum sentence of life imprisonment. *Id.* ¶ 10(a). For purposes of his advisory Sentencing Guidelines calculations, the parties agreed that Petitioner's base offense level for the Aggravated Sexual Abuse Count was 38 and he would receive a two-level enhancement pursuant to Guideline § 2A3.1(b)(3) because Victim C was in his supervisory control. *Id.* ¶ 12(b)(i)–(ii). Likewise, Petitioner's offense level for the two counts from Central District indictment was 40 based on the agreed applicability of various enhancements. *Id.*

¶ 12(b)(iii)–(vii).  For the other relevant conduct related to the production of child pornography involving Victims D through H, his total offense level was 38.  *Id.* ¶ 12(b)(viii)–(x).

Pursuant to Guidelines §§ 3D1.2(d), 3D1.4, and 2G2.1, the parties agreed that Petitioner was required to receive a five-level enhancement from the highest offense level applicable to this group of offenses.  Plea Agreement ¶ 12(xii).  As a result, his offense level of 40 was increased to 45.  Petitioner then received a three-point reduction for acceptance of responsibility (*id.* ¶¶ 12(b)(xiii)–(xiv)), but a five-level increase pursuant to Guidelines § 4B1.5(b) because Petitioner's "instant offenses of conviction [were] covered sex crimes" and Petitioner "engaged in a pattern of activity involving prohibited sexual conduct" (*id.* ¶ 12(c)).  Since these calculations ultimately resulted in total offense level of 47, Plaintiff was treated as having an offense level of 43—the maximum.  See U.S.S.G. § 5, Part A, App. N.2.  And even though Petitioner was placed in criminal history category I, his advisory Sentencing Guidelines range was still life.  See U.S.S.G. § 5, Part A; Plea Agreement ¶ 12(e).  However, Government agreed to recommend a sentence of not more than 50 years' imprisonment.  Plea Agreement ¶ 13.

In securing that concession from the Government, Petitioner agreed to give up various rights.  *Id.* ¶ 24.  He acknowledged that he understood that "[i]f the trial is a jury trial, the jury would be instructed that [he] is presumed innocent, that the government has the burden of proving [him] guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt," and he was giving up that right.  *Id.* ¶ 24(a)(iii).  He stated that he "understands he is waiving all appellate issues that might have been available" and "knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term and fine within the maximums

provided by law * * * in exchange for the concessions made by the United States in this Agreement." *Id.* ¶ 24(b). He also "waive[d] his right to challenge his conviction and sentence, and the manner in which the sentence was determined * * * in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255." *Id.* This waiver "d[id] not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or its negotiation." *Id.* Petitioner further acknowledged that if he violated any term of this agreement, the Government could move to prosecute Petitioner or resentence him regardless of the concessions agreed to in the plea. *Id.* ¶ 34. In signing the plea, Petitioner represented that he "understands and voluntarily accepts and each and every term and condition of this Agreement." *Id.* ¶ 36.

After the plea agreement was negotiated and filed on the docket, Petitioner's attorney filed a detailed sentencing memorandum in which he advocated that Petitioner should receive the mandatory minimum, 30 years. See *United States v. Cruz*, Case No. 11-CR-773, Dkt. 38 (N.D. Ill.) ("Sentencing Memorandum").[1] In furtherance of that goal, the memorandum includes various statements attempting to acknowledge the seriousness of Petitioner's offense while arguing for mitigation. For example, the memo states,

> To start with, Mr. Cruz admits that his crimes are beyond serious. No effort is made to say otherwise. Children are the most vulnerable members of society, and the sexual abuse of children can and often does leave psychological scars that last a lifetime, or are even transferred to the next generation. None of the victims in this case deserved what Mr. Cruz did. One point needs to be made, but very delicately, and bookended by the admission that Mr. Cruz's conduct was wrong, harmful, and inexcusable. By making the following point, Mr. Cruz is not saying that children were not harmed. But they could have been harmed in worse ways.

---

[1] Although this memorandum was filed under seal, Petitioner extensively quotes from it in his motion, which was not filed under seal. [See 1, at 24–25, at 32–33.] The Court quotes from Petitioner's sentencing memorandum only as necessary to address Petitioner's arguments.

*Id.* at 7. In discussing the effect of civil commitment laws on the incapacitation purpose of sentencing embodied in 18 U.S.C. § 3553, Petitioner's counsel noted that technologies might be developed in the future that would minimize Petitioner's pedophilic impulses and "[w]hile the defense cannot say with any assurance that these technologies will exist, the government is equally unable to say they will not. The year 2037 is a long time from now." *Id.* at 19 n.20.

> Other parts of memorandum try to walk this difficult line as well. The conclusion states,

> Finally, despite all this horror, it is fitting to show some compassion for Mr. Cruz. Once again, it is admitted that his crimes are horrible, and that decades of punishment are deserved. At the same time, Mr. Cruz is someone who was tormented as a child, sexually abused as a child, and became a pedophile without making a conscious choice to do so.

*Id.* at 21. The conclusion also quotes from the 1941 movie, *The Wolf Man*, after which his attorney states, "Like Lon Chaney's fictional wolfman, Bobby Cruz is both a danger to society and a pathetic unfortunate who deserves our pity. Both those viewpoints are valid." *Id.* at 20.

On April 23, 2014, the Court accepted the parties' recommendation in the plea agreement to impose a sentence below the advisory Guidelines range of life and imposed a sentence of 50 years. The Court explained that "[g]iven the duration of the crimes, the number of victims, and the brazenness with which Defendant committed the crimes on the children of his relatives, friends, and co-workers, his astonishing lack of impulse control requires incapacitation for a lengthy period of time." *United States v. Cruz*, Case No. 11-CR-773, Dkt. 45, at 4 (N.D. Ill.).

Notwithstanding his plea agreement, Petitioner filed the instant motion pursuant to 28 U.S.C. § 2255, challenging both his sentence and the terms of his plea [1]. Petitioner's opening motion raises two main arguments. First, he argues that he received ineffective assistance of counsel when his attorney failed to challenge the "jurisdictional nexus" under 18 U.S.C. § 2241(c) required to try him in the Northern District of Illinois. [1, at 19–22.] Petitioner contends that he lacked intent to engage in sexual conduct with Victim C prior to entering Missouri

6

(although he formed this intent afterwards), and thus should have been tried either in the Eastern District of Missouri or Missouri state court. Second, Petitioner argues that he received ineffective assistance of counsel at sentencing, both because his attorney injected his "personal moral belief" about Petitioner's crimes in the sentencing memorandum and failed to challenge certain sentencing enhancements. [1, 24–33.]

More than a year after Petitioner filed his opening brief, he filed a motion to amend his § 2255 motion [18] and a second reply brief [19] that advanced a different argument. In this filing, Petitioner argues that he received ineffective assistance of counsel when his attorney erroneously told him that intent would be "presumed" against him under 18 U.S.C. § 2241(c) based on the fact that he "had previously taken pictures of Victim C" in the months before he committed the October 2010 offense. [19, at 21.] Petitioner asserts that he only pled guilty to the Aggravated Sexual Abuse Count because he believed that Respondent did not have to prove intent, and because he "had not crossed a state line with 'intent' to engage in a sexual act" with Victim C, he would not have pled guilty to this count but for this erroneous advice. *Id.*

## II.    Legal Standard

The Seventh Circuit has stressed that "relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Under § 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States,* 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). A § 2255 motion is not a substitute for a direct criminal appeal. See *Varela v. United States,* 481

F.3d 932, 935 (7th Cir. 2007) (stating that a § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal").

## III.   Analysis

Before turning to the substance of Petitioner's arguments, the Court first addresses the scope of the waiver in his plea agreement. "[W]aivers of direct and collateral review in plea agreements are generally enforceable." *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013). However, the Seventh Circuit has "repeatedly recognized that appellate and collateral review waivers cannot be invoked against claims that counsel was ineffective in the negotiation of the plea agreement." *Id.* Respondent contends that the "only claim the defendant may bring in a Section 2255 motion is one pertaining to 'a claim of voluntariness or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.'" [5, at 2 (citing Petitioner's Plea Agreement).] This narrow conception of a defendant's ability to avoid a collateral review waiver—that the ineffective assistance must relate "directly" to the waiver or the waiver's negotiation—is incorrect.[2]

In *Hurlow*, the Seventh Circuit explained that "we have never held that the waiver is unenforceable only when counsel is ineffective in negotiating the specific waiver provision." 726 F.3d at 965. Rather, the Seventh Circuit has "affirmed that an attorney's ineffectiveness with regard to the plea agreement as a whole, and not just the specific waiver provision at issue, renders the waiver unenforceable." *Id.* (collecting cases). "Justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement

---

[2] Respondent originally filed a short response that Petitioner's claims were waived by the plea. [5.] The Court then ordered Respondent to file a "substantive response" [11]. Missing that cue, Respondent's next brief still failed to engage meaningfully with Petitioner's arguments, citing practically no case law or other authority supporting its position that Petitioner's jurisdictional and sentencing arguments lack merit. And Respondent simply failed to respond Petitioner's motion to amend [18]. This approach lacks the persuasive force of a reasoned argument.

cannot be barred by the agreement itself—the very product of the alleged ineffectiveness." *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999); accord *Smith v. United States*, 2013 WL 6632637, at *1 (N.D. Ill. Dec. 16, 2013) ("[A]ppellate waivers, no matter how narrowly crafted, do not bar a defendant's claim that he entered into a plea agreement based upon advice of counsel that fell below Sixth Amendment standards"). Thus, a defendant "need not have alleged that his counsel was ineffective in the negotiation of the waiver provision of his plea agreement specifically" to escape the force of the waiver based on an ineffectiveness claim. *Hurlow*, 726 F.3d at 966.

That said, "[n]ot every claim of ineffective assistance of counsel can overcome a waiver in a plea agreement." *Hurlow*, 726 F.3d at 966. Petitioner "cannot just assert that a constitutional violation preceded his decision to plead guilty or that his trial counsel was ineffective for failing to raise the constitutional claim," but "must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards." *Id.* at 966–68 (declining to enforce waiver where attorney had "persuaded" and "cajoled" defendant into pleading guilty, and defendant alleged that he "would not have agreed to the terms of the plea agreement had his counsel informed him of his potentially meritorious Fourth Amendment claim"). He "must allege that the plea agreement was the product of ineffective assistance of counsel or tainted by ineffective assistance of counsel." *Id.* at 966–67 (citation and internal quotation marks omitted). Moreover, the waiver continues to operate against claims that are *unrelated* to the plea agreement, such as a "challenge [to] a sentence not yet imposed, including challenges based on the ineffectiveness of his counsel at sentencing." *United States v. Smith*, 759 F.3d 702, 707 (7th Cir. 2014); accord *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000) (enforcing waiver for defendant's "attorney's performance with respect to sentencing").

To show ineffective assistance of counsel, Petitioner must show that (1) his lawyer's performance fell below an "objective standard of reasonableness" and (2) there is a reasonable probability that the result of the proceedings would have been different but for his counsel's "unprofessional errors." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371–72 (2010). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Furthermore, when a conviction is obtained through a plea agreement, prejudice means that Petitioner "must show that if his counsel had not made the error of which he complains * * * there was a 'reasonable probability' that he (the [Petitioner]) would have gone to trial rather than have pleaded guilty." *DeBartolo v. United States*, 790 F.3d 775, 777–78 (7th Cir. 2015). "The defendant must also show that to reject the plea bargain and go to trial would have been 'rational under the circumstances.'" *Id.* at 788 (quoting *Padilla*, 559 U.S. at 372). Both components of the *Strickland* test must be satisfied; "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996).

With these principles in mind, the Court turns to Petitioner's three distinct arguments: (1) the Aggravated Sexual Abuse Count lacks a "jurisdictional nexus" to the Northern District of Illinois; (2) his attorney's sentencing advocacy and failure to challenge sentencing enhancements was constitutionally deficient; and (3) his attorney gave him constitutionally deficient advice regarding the intent element of the Aggravated Sexual Abuse Count.

### A.     Aggravated Sexual Abuse Count's Jurisdictional Nexus

Petitioner's first challenge to the Aggravated Sexual Abuse Count conflates at least two concepts. He argues that his counsel was deficient because he "did not argue [that] venue" was improper because "the offense attached to 18 U.S.C. § 2241(c) took place outside the Northern

District of Illinois." [1, at 17.] He also argues that his attorney was deficient because he failed to dispute that "the Northern District of Illinois lacked the subject matter jurisdiction to apply 18 U.S.C. § 2241(c) since the offense took place in St. Louis, Missouri, the [Eighth] Circuit's Eastern District of Missouri." *Id.* at 20. He contends that his "indictment in St. Louis" should have been issued by either the State of Missouri or "[a]t the least, the U.S. District Court of the Eastern District [of Missouri]." *Id.* at 21–22. Because Petitioner is *pro se*, the Court construes this claim to be that his attorney should have challenged venue in the Northern District of Illinois and federal jurisdiction generally.

Neither argument has merit. First, when an offense has "begun in one district and completed in another, or committed in more than one district," venue is proper "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). This venue statute applies to charges under 18 U.S.C. § 2241(c). See *United States v. Lukashov*, 694 F.3d 1107, 1121 (9th Cir. 2012); *United States v. King*, 604 F.3d 125, 139 (3d Cir. 2010); *United States v. Cryar*, 232 F.3d 1318, 1321–22 (10th Cir. 2000); *United States v. Ridings*, 2009 WL 36764, at *3–4 (N.D. W. Va. Jan. 6, 2009). Petitioner does not dispute that he "traveled from Des Plaines, Illinois to St. Louis, Missouri with Victim C." Plea Agreement ¶ 6(a). Under Section 3237(a), Petitioner did not need to form this intent in Des Plaines for venue to be appropriate in this district, and thus Petitioner's efforts to dispute where exactly he formed the intent to molest Victim C are irrelevant for a continuing offense like this one. See *King*, 604 F.3d at 139–40 (rejecting as "specious" the argument that defendant was innocent because he lacked the "requisite intent *while crossing* state lines" because "the requisite intent may be formed at any point during the 'interstate travel'"). Because Petitioner began his offense in the Northern District of Illinois, traveled through this district on the way to Missouri, and then

11

returned to the district as the trip ended, venue was proper in the Northern District of Illinois pursuant to 18 U.S.C. § 3237(a). See *Ridings*, 2009 WL 36764, at *3–4 ("Crossing a state line entails both the act of leaving one state and the act of entering another," and holding that venue for § 2241(c) charge was proper in the departure state).

But there are *many* other problems with Petitioner's venue argument. Petitioner never comes close to explaining how he "entered the plea agreement based on advice of counsel" only because he was unaware of the viability of a venue challenge. *Hurlow*, 726 F.3d at 967. At best, his argument is that "that his trial counsel was ineffective for failing to raise the constitutional claim," which is insufficient to avoid the force of his collateral review waiver. *Id.* at 966. Even assuming he can avoid the collateral review waiver, Petitioner's argument that his counsel was ineffective for not disputing venue falters on both *Strickland* prongs. Had his attorney contested the facts supporting venue, the trial court would have "view[ed] the evidence in the light most favorable to the government in determining whether the government showed by a preponderance of the evidence that the crime occurred in the district charged." *United States v. Tingle*, 183 F.3d 719, 726 (7th Cir. 1999); accord *United States v. Orona-Ibarra*, 831 F.3d 867, 871 (7th Cir. 2016). Against that deferential standard, the venue provisions of 18 U.S.C. § 3237(a), and the evidence that Petitioner previously abused Victim C in and started his travel to Missouri from this district—none of which Petitioner disputes—it can hardly be said that Petitioner's attorney fell below an objectively reasonable standard in not making such an argument.

Petitioner also fails to allege any prejudice from his attorney's failure to pursue a venue challenge. Tellingly, Petitioner does not claim that "there was a 'reasonable probability' that he (the [Petitioner]) would have gone to trial rather than have pleaded guilty." *DeBartolo*, 790 F.3d at 777–78. He merely alleges that the Eastern District of Missouri should have filed his

12

indictment. [1, at 22.] Petitioner did not suffer prejudice if he simply would have pled guilty in another federal district, and he does not seriously contend that he would have gone to trial had he been charged in Eastern District of Missouri or why that would have been rational. And even if he had made these arguments, any claim of prejudice is refuted by the fact that Petitioner consolidated his indictments in the Northern District of Illinois. See *United States v. Cruz*, Case No. 11-CR-773, Dkt. 26 (N.D. Ill.). Petitioner offers no explanation for why it would have made sense to transfer the two counts filed in the Central District to the Northern District of Illinois for sentencing, only to transfer away the Aggravated Sexual Abuse Count to the Eastern District of Missouri for sentencing. The failure to undertake this pointless exercise did not prejudice him.

Second, Petitioner's "subject matter jurisdiction" argument misunderstands what jurisdiction means in this context. The interstate travel element of 18 U.S.C. § 2241(c) "is 'jurisdictional' only in the shorthand sense that without that nexus, there can be no federal crime." *United States v. Martin*, 147 F.3d 529, 531–32 (7th Cir. 1998). "It is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, *i.e.*, a court's constitutional or statutory power to adjudicate a case." *Id.* at 532 (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998)). It "is simply an element of a federal crime." *United States v. Lacey*, 569 F.3d 319, 323 (7th Cir. 2009). Because interstate travel is one of the elements of Section 2241(c), "an absence of proof on the issue may doom the government's case, but it will not deprive the court of jurisdiction." *Martin v. United States*, 333 F.3d 819, 821 n.2 (7th Cir. 2003).

Thus, Plaintiff's jurisdictional argument is—at bottom—a claim that his attorney was ineffective for not challenging whether the Government could have proven Section 2241(c)'s interstate travel element on the merits to a jury. Such a challenge would have failed. Petitioner does not dispute that he traveled from Illinois to Missouri with Victim C and then engaged in a

sexual act with Victim C in Missouri. [See 1, at 21 (Petitioner "states that his intentions were to go on the trip to St Louis with the family"); *id.* at 1 ("During this trip while sharing a hotel room [Petitioner] had sex with the minor.").] Petitioner fails to explain how his attorney fell below an "objective standard of reasonableness" by not challenging the interstate travel element or how it is reasonably probable that he would have rejected this plea and gone to trial to dispute whether he traveled across state lines.

One additional point is worth mentioning. Parts of Petitioner's motion could be read to suggest that his attorney was deficient for failing to contest his intent. [See 1, at 21–22.] The "intent" element under Section 2241(c) is distinct from the "jurisdictional" element. See *Sealed Appellee v. Sealed Appellant*, 825 F.3d 247, 251 (5th Cir. 2016) (explaining that an offense under § 2241(c) "has three elements: (1) the crossing of a state line; (2) with the intent to engage in a sexual act with a minor under the age of 12 years; (3) and either performing or attempting to perform the act" (collecting cases)). Accordingly, an argument that the "indictment in St. Louis should have been handled by the State of Missouri because of the mens rea element not being sufficient to constitute federal jurisdiction" [1, at 21–22] could not have prevailed before trial or here because it (1) would have been an attack on the merits, not jurisdiction; (2) has nothing to do with advice that he received from his lawyer (and thus would be barred by Petitioner's waiver); and (3) falls short of *Hurlow*'s prejudice standard (since he does not claim that he would have gone to trial in Missouri or why that would have been rational). In any event, Petitioner expressly admitted in his plea agreement that he "crossed a State line with intent to engage in a sexual act" with Victim C and "[a]t the time of the travel, [he] intended to engage in a sexual act with Victim C, who was 11 years old, once arriving in Missouri." *Id.* ¶ 6(a). Either Petitioner

perjured himself in making these admissions or his attorney was not ineffective for failing to contest Petitioner's intent in light of these true facts.

In short, Petitioner has not satisfied his burden to show that he received ineffective assistance of counsel based on his attorney's failure to challenge venue in the Northern District of Illinois or subject matter jurisdiction generally.

### B. Sentencing-Related Arguments

Petitioner raises two sentencing-related claims. First, he argues that he received ineffective assistance of counsel when his attorney inserted his "personal moral beliefs * * * that [Petitioner] should receive as much time incarcerated as possible in whatever manner is available," evidenced by repeated references in the sentencing memorandum to the heinousness of Petitioner's offenses. [1, at 23–25.] Second, Petitioner argues that his 50-year sentence was "substantively unreasonable," violates the Eighth Amendment, and many of the Sentencing Guideline enhancements he received were inappropriate. [1, at 28–32.]

Both of these arguments are barred by the collateral review waiver in Petitioner's plea. Petitioner expressly "waive[d] his right to challenge his conviction and sentence, and the manner in which the sentence was determined * * * in any collateral attack or future challenge." Plea Agreement ¶ 24(b). "There is no doubt that a defendant may waive his right to challenge a sentence not yet imposed, including challenges based on the ineffectiveness of his counsel at sentencing." *Smith*, 759 F.3d at 707. The Seventh Circuit has "repeatedly enforced such waivers and dismissed appeals contending that the defendant was deprived of the effective assistance of sentencing counsel." *Id.* (collecting cases). Neither Petitioner's attorney's sentencing memorandum nor the Court's decision to impose certain sentencing enhancements—both of which occurred after the plea agreement was finalized—speak to whether the "plea agreement

was the product of ineffective assistance of counsel." *Hurlow*, 726 F.3d at 966–67; see *Mason*, 211 F.3d at 1069 ("[Defendant's] ineffective assistance of counsel claim relates only to his attorney's performance with respect to sentencing. Because the challenge has nothing to do with the issue of a deficient negotiation of the waiver, [defendant] has waived his right to seek post-conviction relief."); *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) ("As to [defendant's] allegations about counsel's performance at sentencing, however, the plea-agreement waiver is effective."); *United States v. Feichtinger*, 105 F.3d 1188, 1190 (7th Cir. 1997) ("[A]n improper application of the guidelines is not a reason to invalidate a knowing and voluntary waiver of appeal rights."); *Smith*, 2013 WL 6632637, at *2 (enforcing waiver against claims of erroneous Sentencing Guidelines enhancements); *Daniel v. United States*, 2001 WL 76335, at *2 (N.D. Ill. Jan. 26, 2001) (enforcing waiver against claim that defendant's "criminal history points were miscalculated"). Thus, Petitioner's collateral review waiver retains its full effect and bars these challenges.

Assuming that Petitioner could somehow avoid this waiver, these arguments would still fail on their merits. To start, Petitioner misconstrues his attorney's sentencing memorandum arguments. Petitioner faced a thirty-year mandatory minimum sentence for the Aggravated Sexual Abuse Count. See 18 U.S.C. § 2241(c); see also *United States v. Farley*, 607 F.3d 1294, 1345 (11th Cir. 2010) (reversing district court for concluding that "the mandatory minimum sentence of thirty years required by § 2241(c) is constitutionally disproportionate to the crime"). Rather than argue Petitioner should receive "as much time incarcerated as possible" [1, at 24], his attorney advocated for the statutory *minimum* [Sentencing Memorandum, at 1].

Furthermore, Petitioner's focus on a handful of statements plucked out of context from his sentencing memorandum misses his attorney's point. The plea agreement established that the

parties could argue for sentences anywhere between 30 and 50 years. Plea Agreement ¶ 13. To that end, his attorney provided a detailed, 24-page sentencing memorandum that discusses a psychological evaluation of Petitioner, Petitioner's lack of self-control, his childhood, how his crimes could have been worse, Seventh Circuit case law showing that there "are far more cases where a sentence of 30 years or less is imposed," and how the purposes of punishment are satisfied by a thirty-year sentence. [See Sentencing Memorandum.] Downplaying the egregiousness of Petitioner's conduct or the devastating impact on his many victims would have risked undermining an argument that a thirty-year sentence was "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). It also would have been inconsistent with Petitioner's "affirmative acceptance of personal responsibility for his criminal conduct." Plea Agreement ¶ 11(xiii). In fact, many of the statements that Petitioner complains of (*e.g.*, "None of the victims in this case deserved with Mr. Cruz did" [1, at 24]) mirror statements from Petitioner's letter to the Court before sentencing ("What I am is horrible. I am sorry to the kids and their families. They didn't deserve this." [38-1, at 22.]).

In other words, Petitioner's counsel was not venting his moral disapproval of Petitioner's crimes, but was strategically emphasizing Petitioner's acceptance of responsibility for his crimes and his acknowledgement of their severity in an attempt to engender sympathy and (ultimately) leniency at sentencing. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Petitioner's attorney's approach at sentencing was entirely appropriate and Petitioner suffered no prejudice in the sentence that this Court imposed because his attorney pursued this tactic.

Likewise, Petitioner's arguments about the appropriateness of certain Sentence Guidelines enhancements—all of which he expressly agreed to in his plea agreement—are non-

starters. "Allegations that the district judge misapplied the sentencing guidelines are not reviewable under § 2255." *United States v. Wisch*, 275 F.3d 620, 625 (7th Cir. 2001); *Taylor v. Gilkey*, 314 F.3d 832, 833 (7th Cir. 2002) ("[Petitioner] filed in the sentencing court * * * a motion arguing that an error in applying the Sentencing Guidelines' grouping rules had elevated his range by 6 to 21 months, and that the judge should correct this error by reducing his sentence. Because the Guidelines are not 'laws' for purposes of § 2255, however, this argument could not support relief."). That is why courts "insist on strict adherence to the requirements of an ineffective assistance of counsel claim in order to ensure that only Sentencing Guidelines errors of constitutional proportion are considered on collateral review." *Allen v. United States*, 175 F.3d 560, 563 (7th Cir. 1999). Petitioner does not include *any* argument as to how his attorney was constitutionally deficient in agreeing to *any* of these Guidelines enhancements or calculations. Regardless, these "errors" fall significantly short of constitutional proportions.

Petitioner claims that he should not have received Guideline § 2A3.1(b)(3)'s two-level enhancement (which applies if the victim was in a defendant's "custody, care, or supervisory control") because Victim C's "parents retained full custody of the victim and they were in supervisory control that cannot be extended to [Petitioner] just because he was in a temporary control situation that the victim's parent's placed him in." [1, at 29.][3] The Guidelines application notes state that this enhancement is to "be construed broadly" and "the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship." U.S.S.G § 2A3.1, App. N.3(A). Petitioner abused Victim C after Victim C's parents left him with Petitioner in Petitioner's hotel room.

---

[3] This argument—and the many like it in his motion—begs the question of whether Petitioner has actually accepted personal responsibility for his criminal conduct, as he professed to do in his plea.

This "temporary" supervision and custody of Victim C more than qualifies under Guideline § 2A3.1(b)(3), and Petitioner does not cite a single authority to the contrary.

Regarding the two counts of child pornography production from the Central District of Illinois indictment, Petitioner challenges the three enhancements under Guideline § 2G2.1 that resulted in elevating his offense from a base offense level of 32 to 40 on the grounds that "these are prime examples of compounding the elemental scheme of a statute to achieve an increased sentence." [1, at 29.] Petitioner's quarrel is with the Sentencing Commission, not his attorney or this Court. He suffered no constitutional injury because the Court did not depart from the child pornography Guidelines on policy grounds. He also suffered no prejudice from this calculation, since it resulted in the same offense level subtotal as his Aggravated Sexual Abuse Count.

Petitioner also disputes that the five-level enhancement imposed as a result of Guidelines §§ 3D1.2(d), 3D1.4, and 2G2.1 should apply based on conduct involving victims D through H because Petitioner "did not plead guilty to the incidents that 'D-H' were involved in." [1, at 29.] Petitioner overlooks that he admitted that his abuse of Victims D, E, F, G, and H counts as "relevant conduct" (Plea Agreement ¶ 8), which meant the victims could be counted for grouping purposes pursuant to Guideline § 1B1.3. See, *e.g.*, U.S.S.G § 1B1.3, App. N.5(A) ("Application of [§ 3D1.2(d)] does not require the defendant, in fact, to have been convicted of multiple counts.").[4] He also claims that he should not have received a five-level enhancement under § 4B1.5 for "Repeat and Dangerous Sex Offender[s]" because he claims that "this provision is

---

[4] Petitioner also points out that § 2G2.1 is expressly excluded from grouping under § 3D1.2 [1, at 29–30], but he misunderstands what that means. Section 2G2.1(d) provides a "special instruction" that "[i]f the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction." Said differently, "each minor exploited is to be treated as a separate minor," which means "multiple counts involving the exploitation of different minors" are counted individually. U.S.S.G § 2G2.1, App. N.7. That is why Petitioner received 9 units (one unit each for Victims D, E, F, G, and H, one unit each for Count 5 and the two Central District of Illinois counts, and one unit for stipulated conduct), which results in a five-level increase under § 3D1.4. Petitioner fails to identify any error in these calculations.

for recidivist offenders" only. [1, at 30.] By its terms this provision applies when a defendant engages in a "pattern of activity involving prohibited sexual conduct." U.S.S.G § 4B1.5. Petitioner's conduct—multiple victims over many years—plainly fits that description.[5]

Petitioner's other claim that his sentence was "substantively unreasonable" is equally without merit. His statutory maximum was life. 18 U.S.C. § 2241(c). His guidelines sentence was life. Plea Agreement ¶ 12(e). He expressly agreed that his sentence "shall include a term of imprisonment * * * [of] not more than 50 years." *Id.* ¶ 13. Petitioner fails to explain how a sentence that (1) he agreed could be imposed and (2) was *below* his advisory Guidelines range and his statutory maximum is substantively unreasonable or violates the Eighth Amendment.

In short, Petitioner's sentencing related arguments are not a basis to grant him relief under 28 U.S.C. § 2255.

## C.     Advice Regarding Aggravated Sexual Abuse Count's Intent Element

Petitioner's motion to amend and second reply set forth a new argument for relief: he received ineffective assistance of counsel when his attorney provided erroneous advice "that the Government did not need to prove 'intent' in 18 U.S.C. § 2241(c), which induced [his] guilty plea." [19, at 6.] Petitioner asserted this argument for the first time on October 3, 2016—nearly a year and half after the statute of limitations on his Section 2255 claim had run. See 28 U.S.C. § 2255(f). Petitioner does not say why he did not raise this claim in his original motion. The first hurdle that he must overcome is whether this claim "relates back" to his original motion.

---

[5] To support his recidivists only argument, Petitioner quotes one sentence from the background section of § 4B1.5, which states that "[t]he relevant criminal provisions provide for increased statutory maximum penalties for repeat sex offenders and make those increased statutory maximum penalties available if the defendant previously was convicted of any of several federal and state sex offenses." [1, at 30.] Had Petitioner kept reading, he would have seen the next sentence, which makes it clear that "[i]n addition, [Congress] directed the Commission to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors." U.S.S.G § 4B1.5, Background.

Rule 15 permits a party to amend its pleading once as a matter of course either within 21 days after serving it or 21 days after service of responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "A district court may properly deny a motion to amend as futile if the proposed amendment would be barred by the statute of limitations." *Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002). An amendment can avoid that fate if it "relates back to the date of the original pleading," meaning that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In the federal habeas context, the Supreme Court has held that an amended petition "does not relate back (and thereby escape [Section 2255's] one–year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). "[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659. It is "ordinarily allowed when the new claim is based on the same facts as the original pleading and only changes the legal theory." *Id.* at 664 (citation and internal quotation marks omitted).

Petitioner's new ineffective assistance of counsel claim does not relate back to his original motion. "[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005); accord *Vallar v. United States*, 2013 WL 3147351, at *3 (N.D. Ill. June 19, 2013) ("[O]ne ineffective assistance claim does not automatically relate back to another." (collecting cases)).

Here, Petitioner's original claim was that his attorney should have challenged either the Northern District of Illinois' "venue" or "subject matter jurisdiction" based on where he formed the intent to engage in a sexual act with Victim C, and that he should have been sentenced, tried, or indicted in another court. His new claim relates to advice that he allegedly received from his lawyer about how Respondent could meet its burden to prove Petitioner's intent. One claim is about where he should have been tried; the other is about whether he was adequately advised of Respondent's burden. One pertains to a motion that his attorney allegedly should have filed before the plea was signed; the other is about specific advice that he received in deciding to enter into the plea. If there is a common core of operative facts that overlap between these two claims, Petitioner does not identify what those facts are. His original venue and jurisdictional claim has nothing to do with how Respondent could prove intent or how the evidence would be evaluated by the jury to determine his intent. Indeed, Petitioner's original claim does not mention any advice that he received from his attorney at all. Even if one can overlook all the ways in which Petitioner's original challenge to Sections 2241(c)'s "jurisdictional nexus" was really about interstate or geographical issues (rather than intent), the only similarity between his original and amended claim is that they both, at times, touch on issues regarding the same *element*—intent. But that does not mean these claims are based on the same *facts*, which is what matters under *Mayle*.[6] Petitioner's motion to amend his Section 2255 motion [18] is denied.

---

[6] Petitioner relies on *Blakey v. Wenerowicz*, 2016 WL 4650593 (M.D. Pa. June 20, 2016). [18, at 4–6.] In *Blakey*, the Magistrate Judge allowed an amendment of a habeas petition where the original claims were for ineffective assistance of counsel based on an attorney's "failure to object" to an expert's testimony "on the ground that it lacked the necessary factual foundation to be admissible." *Id.* at *4. The amended claim was that petitioner's attorney failed to "file a timely motion *in limine* to exclude [this same expert's] expert testimony in general on the ground that it lacked the necessary factual foundation to be admissible." *Id.* Both claims concerned the same flaw (lack of foundation) in the same expert's opinion, and thus related back. Those facts do not bear any resemblance to Petitioner's claims, which concern different alleged deficiencies in his attorney's performance that occurred at different times with different alleged effects and resulted in different alleged constitutional harms.

Even if the Court were to allow Petitioner to amend his motion, this new ineffective assistance claim would not succeed. Petitioner submits an affidavit to support this claim. [See 19, at 18–21.] Although that affidavit begins with the admission that Petitioner has a "learning disorder that makes [it] difficult to learn or retain information," *id.* at 18, he then proceeds to recount—in detail—the events underlying the Aggravated Sexual Abuse Count from October 2010. Petitioner states that he traveled to Missouri with Victim C's family, but his only intention was "to consume significant amounts of alcohol" and "go to Six Flags." *Id.* at 19. According to Petitioner, it was only after he arrived in Missouri when Victim C asked to stay in his room that his intent changed. Petitioner states that he told his attorney, "multiple times, that [he] did not understand why [he] had been charged with" violating Section 2241(c) and "[adamantly] advised [his attorney] many times that [he] did not go on the trip with any intent to engage in a sex act." *Id.* at 20. Petitioner states that his attorney "advised [him] as many times that because [he] had previously taken [pictures] of Victims C (approximately six months prior to the trip), the Government did not have to prove 'intent.' It was 'presumed.'" *Id.* at 21. Petitioner then states that he "agreed to plead guilty to [the Aggravated Sexual Abuse Count] only because [his attorney] advised [him] that 'intent' was 'presumed,' therefore the Government did not have to prove intent due to having previously taken pictures of Victim C." *Id.* He concludes by saying

> Had I been properly advised that the Government did have to prove 'intent' as an element of 18 U. S.C. § 2241(c) beyond a reasonable doubt, I would not have pled guilty to the Count. Since I had not crossed a state line with 'intent' to engage in a sexual act with another person who had not attained the age of 12. And therefore was not guilty of such.

*Id.*

The Court is not persuaded. These allegations directly contradict the "facts" that Petitioner admitted in his plea were true and could be proven beyond a reasonable doubt, namely that "[a]t the time of the travel, [Petitioner] intended to engage in a sexual act with Victim C,

23

who was 11 years old, once arriving in Missouri." Plea Agreement ¶ 6(a). Although this ineffective assistance claim is not barred by his collateral review waiver, *Hurlow*, 726 F.3d at 966–68, Petitioner offers no explanation as to why he admitted that specific fact in his plea agreement if it was untrue. Petitioner's plea also states that if he went to trial "the jury would be instructed that [he] is presumed innocent, that the government has the burden of proving [him] guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt." *Id.* ¶ 24(a)(iii). Petitioner makes no effort to reconcile this statement, which he acknowledged in 2013 that he understood (*id.* ¶ 36), with his present allegation that he did not know the Government had to prove his guilt beyond a reasonable doubt.

Frankly, it is hard to square how Petitioner can acknowledge that he has difficulty retaining information [19, at 18], yet profess to remember the specific words that his attorney used in a conversation more than *three years earlier*. After all, he inexplicably failed to mention this conversation until he filed his second reply brief in October 2016—overlooking this advice in his original Section 2255 petition and reply filed in 2015. The implausibility of Petitioner's recall is only underscored by the way that he minimizes his behavior as merely have "taken pictures" of Victim C. In fact, Petitioner "had molested and taken nude photographs of Victim C on *several* occasions." Plea Agreement ¶ 6(a) (emphasis added). He took "at least 167 photographs" and 1 video of Victim C when he was between 7 and 10 years old, which involved Petitioner "placing his mouth on Victim C's penis and intentionally touching, either directly or through the clothing, the genitalia of Victim C with an intent to abuse, humiliate, harass, or degrade Victim C, or arouse or gratify [Petitioner's] sexual desire." *Id.* ¶ 6(b). It is simply not credible that his attorney would have sanitized or wholly ignored this molestation history in their

24

discussions about how Respondent would prove intent before a jury. This kind of distortion is a red flag that Petitioner does not accurately remember these remote conversations. See *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) ("[A] hearing is not necessary if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible.'" (citation omitted)).

Yet, putting aside these reservations and the fact that Petitioner offers no supporting evidence to show that these conversations occurred, the advice that he describes did not violate *Strickland*. See *Evans v. Meyer*, 742 F.2d 371 (7th Cir. 1984). In *Evans*, the petitioner's lawyer "advised him that he had no defense of intoxication" to any of his three charges. *Id.* at 373. The state conceded that legal advice was wrong as a matter of law for at least one charge and the Seventh Circuit assumed this defense was available for all three. *Id.* Nevertheless, the Seventh Circuit held that this error did not entitle petitioner "to a hearing on his claim of ineffective assistance of counsel" because "no competent counsel would have advised [petitioner] to risk a trial in which his defense would have been intoxication." *Id.* Petitioner's argument was essentially that "his lawyer should have told him that he had at least a theoretical defense of intoxication, should have explained to him the unlikelihood that the defense would be accepted in a trial, but should have left to him the ultimate decision whether to raise the defense." *Id.* at 374. Even accepting that this would have been "the better course," the Seventh Circuit reject that this erroneous advice fell below *Strickland*'s objective reasonableness standard because "[i]t is not the normal practice of lawyers to advise their clients of every defense or argument or tactic that while theoretically possible is hopeless as a practical matter." *Id.* "[A] plea of guilty does not have to be perfectly informed in order to be voluntary." *Id.* at 375. The Seventh Circuit also found it "inconceivable" that Petitioner would have gone to trial on this intoxication defense or

that it would have been believed despite his "elaborate negotiations with the police over several hours," and thus the petitioner could not demonstrate the requisite prejudice. *Id.*

The same is true here. Accepting that Petitioner's attorney told him that his intent would be "presumed"[7] based on his extensive, multi-year history of molesting Victim C and inducing Victim C to create child pornography, no competent attorney would have advised Petitioner that he should present a defense that he only decided to molest Victim C in this particular instance once he arrived in Missouri or that he even had a theoretical possibility of prevailing on this defense with a jury. "[A] defendant may have more than one purpose in the interstate transportation of a minor." *United States v. Bonty*, 383 F.3d 575, 578 (7th Cir. 2004). "The government need only prove that a 'significant' or 'compelling' purpose of the trip—not the dominant purpose—was to" engage in a sexual act with a minor. *Id.*; accord *United States v. Danser*, 110 F. Supp. 2d 807, 824 (S.D. Ind. 1999). The jury would have needed to overlook the entire history of Victim C and Petitioner's interactions to believe that Petitioner did not have at least one significant purpose of traveling with Victim C to molest him if the opportunity presented itself. See *Lukashov*, 694 F.3d at 1119 ("That [defendant] also had a commercial purpose for crossing state lines does not negate the inference that he had a significant or motivating purpose to continue abusing [victim] because * * * the government did not have to prove that sexually abusing [victim] was the sole purpose of [defendant's] interstate travel."). Based on the facts of this case, Petitioner's forgone defense to his intent is as theoretical and implausible as the intoxication defense in *Evans*.

---

[7] The only two words that Petitioner puts in quotes in this section of his affidavit are "presumed" and "intent." [19, at 20–21.] Although he speculates that the word "presumed" was used to mean legally presumed, he fails to consider that his attorney simply meant highly likely to found true in the end. Given that Petitioner "has a learning disability and difficulty retaining information" [19, at 11], the more likely scenario is that his lawyer tried to simplify legal topics for him, not complicate them with discussions of legal presumptions. Maybe the better course would have been to say "all but presumed," rather than "presumed." This slight shift in wording would not have matter in light of this case's specific facts.

But there is an even more fundamental problem with Petitioner's pursuit of this defense. Petitioner focuses on the first leg of his trip, but his offense did not end in Missouri. It continued until he and Victim C returned home to Illinois. See *Lukashov*, 694 F.3d at 1122 ("Whenever precisely [defendant] formed his intent to abuse [victim], crossed a state line with illicit intent to abuse her, and abused her, there is no question here about his having committed the offense during his abuse in Montana or North Dakota. But what is important to our analysis is that the continuing offense did not terminate there. [Defendant's] serial sexual abuse of [victim] continued across the country to New York and back through Nevada to Oregon. * * * [T]his continuing offense of sexual abuse of a minor continued *until [victim] was safely home*." (emphasis added)). Thus, the relevant interstate travel was not only the departure from Illinois to Missouri, but also the return from Missouri to Illinois. *Id.* ("Even if [defendant] did not physically abuse [victim] after crossing into Oregon, we conclude that at a minimum the significant element of the crime of illicit intent while crossing a state line continued in Oregon en route to her home."). "The requisite intent may be formed at any point during the 'interstate travel' as long as the defendant traveled 'for the purpose of engaging in the unlawful sexual act.'" *King*, 604 F.3d at 139–40. A defense to Section 2241(c) that Petitioner only formed this intent during the middle of their trip, rather than at the beginning, would have failed as a matter of law.[8] Thus, Petitioner would have been convicted under Section 2241(c) even if he could

---

[8] Cases under the Mann Act provisions with similar intent language (such as 18 U.S.C. § 2423(a)) support this reading. See, *e.g.*, *United States v. McGuire*, 627 F.3d 622, 624 (7th Cir. 2010) ("It is apparent that if, as the jury found, the defendant had molested Dominick on their travels, he violated sections 2421, 2423(a), and 2423(c)" (collecting cases)); *United States v. Hoffman*, 626 F.3d 993, 997 (8th Cir. 2010) ("[T]he return journey *can* be considered apart from its integral relation with the round trip as a whole, in the determination whether a violation of the [Mann] Act has occurred"); *United States v. Cole*, 262 F.3d 704, 708 (8th Cir. 2001) (affirming conviction under § 2423(a) because "[w]hether [defendant] intended to have sex with [victim] in Florida when he transported her out of Arkansas is irrelevant to his conviction. His illicit intent must have been formed only before the conclusion of the interstate state [sic] journey" (internal quotation marks omitted)); *McKinney v. United States*, 2011 WL 2472569, at *6 (E.D.

have persuaded a jury that he formed the necessary intent on the Missouri side of this interstate roundtrip.

Finally, Petitioner fails to establish the requisite prejudice from this advice. "[A] mere allegation by the defendant that he would have insisted on going to trial is not sufficient to establish prejudice." *Bethel v. United States*, 458 F.3d 711, 718 (7th Cir. 2006) (collecting cases). Petitioner offers nothing more than allegation. Moreover, "the prejudice prong focuses on whether the deficient information was the decisive factor in a defendant's decision to plead guilty or to proceed to trial." *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). The fact that Petitioner failed to mention this conversation in his prior briefs (or at any point before October 2016) shows that it was not the "decisive" factor in his decision to plead guilty.

Notably, Petitioner's affidavit merely states he "would not have pled guilty to *the* Count" [19, at 21]—that is, the Aggravated Sexual Abuse Count. Conspicuously absent from his affidavit is a claim that he also would have rejected the plea on his other *nine* counts of child pornography possession and production. The assumption that Petitioner could have retained his plea for these nine counts, but allowed to take his chances with a jury on this remaining count has no basis in reality. Had Petitioner insisted on a trial, he would have been charged and gone to trial on all ten counts.[9] Since Petitioner does not dispute that those allegations are true, there is no rational reasons for him to have insisted on a trial rather than pleading. *DeBartolo*, 790

---

Mo. June 21, 2011) ("Whether movant intended to engage in sexual activity with the victim when he transported her out of Missouri is irrelevant to his conviction. * * * [Movant] transported the victim in interstate commerce when he took the victim and her family with him during his job as an over-the-road trucker. The molestations occurred during out-of-state trips when movant had access to the victim during the time that her mother was not in the truck. Movant clearly had formed his intent to molest the victim when he, in fact, molested her during the interstate trip before they returned to Missouri.").

[9] Petitioner argues that his prior molestation and photography of Victim C might not have been admissible under Federal Rule of Evidence 404(b). [19, at 9.] This evidence would have been admissible as direct evidence of his other child pornography production charges.

F.3d at 778. Moreover, six of those counts have a fifteen-year mandatory minimum and a thirty-year statutory maximum (see 18 U.S.C. § 2251(e)), two mandate sentences between five and twenty years (see 18 U.S.C. § 2252(A)(b)(1)), and one requires sentences up to 20 years (18 U.S.C. § 2252(A)(b)(2)). If Petitioner been acquitted of the Aggravated Sexual Abuse Count but convicted of the others, he could have faced a sentence between 100 and 260 years—an outcome significantly worse than the fifty year maximum he agreed to in his plea. Accordingly, Petitioner fails to show that there was a reasonable probability that he would have insisted on going to trial had he been told more precisely that his intent was not legally presumed but highly likely to be found by a jury based on the overwhelming evidence of his past abuse of Victim C or that it would have been rational to go to trial here. See *DeBartolo*, 790 F.3d at 777–78.

Petitioner's claim that he received ineffective assistance of counsel when he told him his "intent" would be "presumed" is not a basis to grant him relief under 28 U.S.C. § 2255.

## IV. Certificate of Appealability

Per Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard,

Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his Section 2255 claims debatable or wrong. *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ regarding the merits of his claims. Many of Petitioner's claims are barred by his Section 2255 waiver. To the extent that his jurisdictional, sentencing, and burden-related arguments can escape that waiver and Petitioner can show some error that his attorney committed, all of these claims fail both prongs of *Strickland*. Accordingly, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## V.        Conclusion

For the reasons stated above, Petitioner's 28 U.S.C. § 2255 motion [1] and his motion to amend [18] are denied. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2) and directs the Clerk to enter judgment in favor of the United States.

Dated: July 19, 2017

_____
Robert M. Dow, Jr.
United States District Judge

30